UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

N<small>ICOLE</small> C<small>ONAWAY</small>,

    Plaintiff,

    v.

D<small>ETROIT</small> P<small>UBLIC</small> S<small>CHOOLS</small> C<small>MTY</small>. D<small>IST</small>.,

    Defendant.
_____/

Case No. 21-cv-12253

U.S. D<small>ISTRICT</small> C<small>OURT</small> J<small>UDGE</small>
G<small>ERSHWIN</small> A. D<small>RAIN</small>

## OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION [#2] AND DISMISSING PLAINTIFF'S MOTION FOR EXTENSION OF TIME AS MOOT [#17]

### I. I<small>NTRODUCTION</small>

On September 24, 2021, Plaintiff Nicole Conaway filed the instant action against Defendant Detroit Public Schools Community District seeking a temporary restraining order and preliminary injunction. ECF No. 2, PageID.70–71. Plaintiff seeks a court order enjoining Defendant from requiring her to teach at one of Defendant's facilities for the 2021–22 school year. ECF No. 1, PageID.2. Specifically, Plaintiff asserts claims against Defendant for denying her leave under the Family Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA")*,* and for Defendant allegedly violating the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* ("ADA") for not allowing Plaintiff to teach from her home full-time.

1

Presently before the Court is Plaintiff's Motion for a Preliminary Injunction. ECF No. 2, PageID.70. Defendant responded in opposition to Plaintiff's Motion on October 19, 2021. ECF No. 12, PageID.206. Plaintiff submitted her Reply brief on December 2, 2021, following two extensions of time. ECF No. 22, PageID.447. For the reasons discussed below, the Court will DENY Plaintiff's Motion for a Preliminary Injunction.

## II. FACTUAL BACKGROUND

The instant action comes before the Court amidst the COVID-19 pandemic. In March 2020, Defendant voluntarily closed its schools as the virus spread across the country. ECF No. 12, PageID.213. On April 2, 2020, Michigan Governor Gretchen Whitmer ordered all schools across the state to temporarily shut down for the remainder of the 2019–20 school year. *See* Mich. Exec. Order No. 2020-35. Defendant held in-person summer school classes throughout the 2020 summer after the State lifted the school closure order in June 2020. ECF No. 12, PageID.213.

On August 27, 2020 the Detroit Federation of Teachers ("DFT") and Defendant agreed to provide teachers the option of remote teaching or in-person instruction for the 2020–21 school year. ECF No. 12, PageID.213. Many DFT members—including Plaintiff—chose remote teaching. *Id*.

The pandemic's daily death toll peaked in the winter of 2020–21. As thousands of people died from COVID-19 complications every day, thousands of Detroit Public School students went unaccounted for because of the pandemic's disruption. *See* Moriah Balingit, *Unprecedented numbers of students have disappeared during the pandemic. Schools are working harder than ever to find them.*, (Feb. 25, 2021, 11:20 PM), https://www.washingtonpost.com/education/pandemic-schools-students-missing/2021/02/25/f0b27262-5ce8-11eb-a976-bad6431e03e2_story.html ("A month into the [2020–21] school year last fall, 8,000 [Detroit Public Schools] students were still missing."). At the pandemic's darkest hour, light broke through in the form of COVID-19 vaccines. By spring 2021, COVID-19 vaccines were widely available across the City of Detroit. In May 2021, the U.S. Food and Drug Administration expanded its emergency authorization of COVID-19 vaccines to children 12 and over. *Coronavirus (COVID-19) Update: FDA Authorizes Pfizer-BioNTech COVID-19 Vaccine for Emergency Use in Adolescents in Another Important Action in Fight Against Pandemic*, U.S. FOOD & DRUG ADMIN., (May 10, 2021), https://www.fda.gov/news-events/press-announcements/coronavirus-covid-19-update-fda-authorizes-pfizer-biontech-covid-19-vaccine-emergency-use. When Defendant and the DFT engaged in negotiations again over schools reopening that summer, the pandemic looked dramatically different from a year earlier.

On July 15, 2021, Defendant and DFT agreed to teachers returning to teach at Defendant's facilities for the 2021–22 academic year. *See* ECF No. 12-1, PageID.233, 239. The 2021–22 labor agreement between the parties requires teachers to help "fully reopen all schools with immediacy" and prioritize efforts that meet demands "for in-person learning across all District schools." *Id*. at PageID.232. The parties also agreed to create the Detroit Virtual School ("DVS") to "provide[] students who flourish in virtual learning environments with greater opportunities for full-time virtual learning." ECF No. 12-1, PageID.239. The DVS program allows teachers to provide remote instruction to students over virtual learning platforms like Microsoft Teams, PowerSchool, and other technology-based education systems. *Id*. at PageID.240. DVS teachers are required to "report in-person five (5) school days per week, at assigned District designated work locations,"[1] with preference given to applicants "with demonstrated medical conditions." *Id*. Teacher selections for DVS are subject to the program's scheduling needs and enrollment. *Id*.

In early August 2021, Plaintiff—a mathematics and science teacher—applied late to teach in the DVS program. ECF No. 1, PageID.6. Her application

---

[1] At the November 16, 2021 hearing, Defendant's counsel explained how teaching at a Detroit Public School to provide virtual instruction allows teachers to access resources they otherwise cannot at home. DVS teachers can also offer coaching and mentoring opportunities from the DVS building to students who were otherwise not afforded those opportunities virtually last school year.

included a physician's note that emphasized she "would be a good candidate for virtual teaching" because her allergies and asthma increase her risk to COVID-19 health complications.[2]  ECF No. 1-6, PageID.36.  Plaintiff's doctor also emphasized that she "is very able to teach classes virtually," but not for "in-person classroom instruction."  ECF No. 12-1, PageID.261.  Defendant denied Plaintiff's application on August 31, 2021 because the DVS program had no vacancies for mathematics or science teachers when she applied.  ECF No. 1, PageID.2; ECF No. 12, PageID.215.  On September 7, 2021, the DVS program received an influx of student registrations.  *Id.*  That influx led to Defendant hiring additional DVS teachers, although all vacant positions are now filled.  *Id.*

On September 1, 2021, Plaintiff filed an ADA accommodation request to teach remotely from her home because of her allergies and asthma increasing her risk to COVID-19 health complications.  ECF No. 1, PageID.7.  Just over three weeks later, Plaintiff filed an ADA complaint with the Equal Employment Opportunity Commission ("EEOC") on September 23, 2021.  ECF No. 2, PageID.83.  Defendant denied Plaintiff's ADA accommodation request to teach from home fulltime, offering her an alternative accommodation of teaching in the DVS program—which Plaintiff originally requested.  ECF No. 12-1, PageID.250.

---

[2] Plaintiff confirmed that she is fully vaccinated against COVID-19 at the November 16, 2021, in-person hearing.

The response to Plaintiff's ADA Accommodation request considered Plaintiff's health care provider's note and teaching responsibilities. *Id*. Defendant's proposed accommodation permitted Plaintiff to teach from home three days a week as well. Plaintiff rejected Defendant's accommodation, instead insisting that she work from home full-time "until [her] physician determines otherwise." ECF No. 12-1, PageID.254.

While Defendant reviewed Plaintiff's ADA claim, she missed the first week of in-person instruction. ECF No. 1-11, PageID.48. Defendant contacted Plaintiff requesting that she either come to work, resign, or request FMLA leave. *Id*. Plaintiff chose the latter. ECF No. 1, PageID.9. On September 22, Defendant denied Plaintiff's FMLA request. ECF No. 1-9, PageID.62.

Plaintiff initiated this action two days later, requesting a temporary restraining order and preliminary injunctive relief requiring Defendant to allow Plaintiff to work from home full-time. ECF No. 1, PageID.16. The Court denied Plaintiff's request for a temporary restraining order and scheduled a hearing for the preliminary injunction on November 16, 2021, at 11:00 a.m. ECF No. 10, PageID.184.

In October 2021, the parties continued working towards appropriately accommodating Plaintiff's purported disabilities. On October 11, Defendant asked

6

Plaintiff to provide additional medical information about her disabilities.  ECF No. 13, PageID.278.  Plaintiff provided Defendant additional doctors' notes from visits in October 2021.  *Id*.  The doctors' notes state that Plaintiff received care on October 11, 13, and 18, for her asthma complications.  ECF No. 13-3, PageID.294–296. Her most recent doctor's note claims Plaintiff "cannot return to work in the school" and that "[s]he has now been placed [sic] daily maintenance inhaler." *Id*. at PageID.296.

Defendant requested additional information relating to Plaintiff's medical treatment to craft a reasonable accommodation.  ECF No. 12, PageID.224.  As of this writing, Plaintiff has not provided more medical information.  Plaintiff maintains that the information already provided is sufficient for her proposed work-from-home accommodation.  ECF No. 22, PageID.449.  Defendants have not responded to the additional information Plaintiff provided.  *Id*.

Six days before the preliminary injunction hearing, Plaintiff filed a renewed temporary restraining order.  The motion sought an order directing Defendant to continue paying Plaintiff after her sick days expired November 12, 2021.  Plaintiff filed a motion for a one-day extension to submit her reply to Defendant's response alongside the renewed temporary restraining order request.  ECF No. 15, PageID.299.  The Court struck the renewed temporary restraining order at the November 16, 2021, hearing.  Soon thereafter, the Court granted Plaintiff's motion

to extend time to submit her reply. ECF No. 21, PageID.445. Plaintiff filed her reply brief on December 2, 2021. ECF No. 22, PageID.447.

### III. LEGAL STANDARD

Preliminary injunctions are extraordinary remedies reserved only for cases where it is necessary to preserve the status quo. *See Enchant Christmas Light Maze & Market Ltd. v. Glowco, LLC*, 958 F.3d 532, 535 (6th Cir. 2020) (citing *Hall v. Edgewood Partners Ins. Ctr., Inc.*, 878 F.3d 524, 526 (6th Cir. 2017)). A plaintiff seeking preliminary relief must establish that they are likely to succeed on the merits, that they are likely to suffer irreparable harm absent preliminary relief, that the balance of equities tip in their favor, and that an injunction is in the public interest. *See Obama for Am. v. Husted*, 697 F.3d 423, 428 (6th Cir. 2012). The first two factors—likelihood of success and irreparable harm—weigh most heavily on the Court. *See Nken v. Holder*, 556 U.S. 418, 434 (2009).

### IV. DISCUSSION

**A. Likelihood of Success**

To obtain preliminary relief, Plaintiff must make "a strong showing that [she] is likely to succeed on the merits" of her claims. *Nken*, 556 U.S. at 434. Plaintiff argues that Defendant violated her rights under the FMLA and ADA by

not affording her leave nor providing her adequate work accommodations for her alleged disabilities. ECF No. 1, PageID.2. Defendant responds that it lawfully denied Plaintiff's FMLA request, and that Plaintiff's ADA claim should be dismissed. *See* ECF No. 12, PageID.212. The Court addresses the arguments below.

### 1. FMLA Claim

The FMLA entitles an "eligible employee" up to twelve weeks of leave each year if the employee has a "serious health condition" that prevents the employee from performing their job's functions. 29 U.S.C. § 2612(a)(1)(D). Employers cannot discriminate or retaliate against an employee who takes FMLA leave. 29 U.S.C. § 2615(a)(2). For example, employers cannot "use the taking of FMLA leave as a negative factor in employment actions." 29 C.F.R. § 825.220(c). FMLA interference claims require claimants to "show that taking FMLA-protected leave was used as a negative factor in defendant's decision to terminate [them]." *Dyer v. Ventra Sandusky, LLC*, 943 F.3d 472, 476 (6th Cir. 2019). Employers who violate the FMLA are liable to the employee for damages. *See Hunter v. Valley View Local Schs.*, 579 F.3d 688, 691 (6th Cir. 2009) (citing 29 U.S.C. § 2617 (a)(1)).

Here, Plaintiff argues that Defendant wrongly denied her leave, "to retaliate against her for seeking to exercise her rights under the Letter of Agreement by applying for a position at the Detroit Virtual School Program." ECF No. 2, PageID.78. Yet Defendant has not terminated Plaintiff. Moreover, nothing in the 2021–22 labor agreements between Defendant and the DFT entitles teachers to a virtual teaching position. Defendant must "provide preference" to medically vulnerable DVS teaching applicants. ECF No. 1-4, PageID.26. However, hiring decisions ultimately rest on "scheduling needs of the DVS Program," which did not include science or mathematics teachers when Plaintiff belatedly applied. *Id*. Despite Plaintiff submitting her DVS teaching application late, Defendant offered her a DVS position after Plaintiff commenced this action—a position she quickly turned down. ECF No. 12-1, PageID.254. Plaintiff has not met her burden demonstrating that Defendant took any adverse action against her because of Plaintiff's FMLA leave request.

In addition to the lack of retaliatory action on Defendant's part, the Court remains unconvinced that Plaintiff's allergies and asthma are "serious health condition[s]" under the FMLA. 29 U.S.C. § 2612(a)(1). A "serious health condition" is defined in part as an illness or impairment that requires "continuing treatment by a health care provider" that involves "[a] period of incapacity of more than three consecutive, full calendar days." 29 C.F.R. § 825.115(a). Plaintiff is

10

seeing "her doctor weekly for immunotherapy injections" to treat her health conditions, but she is not claiming incapacitation, nor incapacity for more than three consecutive days. ECF No. 13, PageID.279. One doctor's note emphasizes that Plaintiff "is very able to teach classes virtually," which she could not otherwise do if incapacitated from a serious health condition.[3] ECF No. 12-1, PageID.261.

The Court also continues to find Plaintiff's doctors' notes insufficient under 29 C.F.R. § 825.306, which requires "[a] statement or description of appropriate medical facts regarding the patient's health condition for which FMLA leave is requested." Necessary facts such as Plaintiff's symptoms, prescribed medications, her diagnosis, and hospitalization information, are left blank on one doctor's note. ECF No. 1-22, PageID.69. Plaintiff's more recent doctor's notes do not suggest she is hospitalized, although it does include an asthma diagnosis. ECF No. 13-3, PageID.294. Although the Sixth Circuit has not discussed FMLA certification in-depth, other courts have found a physician's FMLA certification inadequate when it fails to establish that an employee has a serious medical condition. *See Bailey v.*

---

[3] Plaintiff's most recent doctor's note recommends that "[s]he cannot return to work in the school" because of her asthma. ECF No. 13-3, PageID.296. But that doctor's note does not suggest Plaintiff is incapacitated. As serious as Plaintiff's health condition might be, it remains unlikely to satisfy the FMLA standard Congress prescribed.

*Southwest Gas Co.*, 275 F.3d 1181, 1186 (9th Cir. 2002) (quoting *Marchisheck v. San Mateo County*, 199 F.3d 1068, 1077 (9th Cir. 1999)).

Plaintiff has not demonstrated that Defendant took retaliatory action against her for seeking FMLA leave nor that she is suffering from a serious health condition. Accordingly, the Court remains convinced that Plaintiff is unlikely to succeed on the merits of her FMLA claim.

### 2. ADA Claim

Next, Plaintiff argues that Defendant has not provided her adequate accommodations under the ADA. ECF No. 1, PageID.2. Defendant contends that Plaintiff's ADA claim is barred for failing to exhaust her administrative remedies. ECF No. 12, PageID.218. Even if Plaintiff exhausted her administrative remedies, Defendant claims that it offered Plaintiff reasonable accommodations to overcome her health complications. *Id*. at PageID.220. Defendant adds that Plaintiff cannot establish a *prima facie* case of ADA discrimination. *Id*. at PageID.222.

The ADA prohibits "discriminat[ion] against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Before bringing an ADA claim in a civil action, claimants must exhaust their administrative remedies. *See* 42 U.S.C. § 2000e-5(e)(1); *see also Marcum v. Oscar Mayer Food Corp.*, 46 Fed. App'x 331, 333 (6th Cir. 2002) ("The exhaustion of administrative remedies is a condition

precedent to an ADA action."). To exhaust administrative remedies, the claimant must file a timely EEOC complaint outlining the alleged discrimination. *See Marcum*, 46 Fed. App'x at 333 (citing *Parry v. Mohawk Motors of Mich., Inc.*, 236 F.3d 299, 309 (6th Cir. 2000) ("An employee may not file a suit under the ADA if he or she does not possess a right-to-sue letter from the EEOC [.]")). Once the EEOC dismisses the complaint and issues a right-to-sue letter can the claimant bring a civil action. *See* 42 U.S.C. § 2000e-5(f)(1).

Plaintiff filed an EEOC complaint on September 23, 2021. ECF No. 1, PageID.11. The EEOC is currently investigating Plaintiff's charge. ECF No. 22, PageID.450. But the EEOC has not provided her with a right-to-sue letter. *Id*. Dismissing an ADA claim is proper when the claimant fails to exhaust their administrative remedies. *See Jenkins v. Foot Locker Inc.*, No. 12-13175, 2014 U.S. Dist. LEXIS 66773, *6 (E.D. Mich. May 15, 2014) (citing *Parry*, 236 F.3d at 309). The Court therefore concludes that Plaintiff is unlikely to succeed on her ADA claim based upon her failure to exhaust her administrative remedies.

However, even if Plaintiff exhausted her administrative remedies with the EEOC, her ADA claim would remain unlikely to succeed. "In order to make a prima facie claim of discrimination, the plaintiff must also show that she suffered an adverse employment action due to her disability." *Talley v. Family Dollar Stores of Ohio, Inc.*, 542 F.3d 1099, 1108 (6th Cir. 2008). Discrimination under

13

the ADA is defined in part as "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." 42 U.S.C. § 12112(b)(5)(A). The ADA recognizes reasonable accommodations to include:

> (A) making existing facilities used by employees readily accessible to and usable by individuals with disabilities; and
>
> (B) job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9). "The disabled employee bears the burden of proposing an accommodation and showing that it is objectively reasonable." *Smith v. Honda of America Mfg., Inc.*, 101 Fed. App'x 20, 25 (6th Cir. 2004). When multiple reasonable accommodations exist, employers pick the accommodation. *See Smith*, 101 Fed. App'x at 25; *see also Hankins v. The Gap, Inc.*, 84 F.3d 797, 800 (6th Cir. 1996) ("[T]he employer providing the accommodation has the ultimate discretion to choose between effective accommodations.").

Plaintiff requested an accommodation for "remote teaching from home" under the ADA. ECF No. 12-1, PageID.245. Defendant offered Plaintiff the relief she originally sought—a virtual teaching position at DVS. ECF No. 12-1, PageID.250. The accommodation allows Plaintiff to teach in the DVS program

14

from a Defendant operated facility two days a week, while teaching from home the remaining three days. That accommodation falls within the ADA's reasonable accommodation definition. *See* 42 U.S.C. § 12111(9)(A). Plaintiff may share a classroom with another teacher until Defendant provides additional space, but teachers sharing a classroom have discretion to wear masks or not while sharing their space. ECF No. 12, PageID.221. Plaintiff bears the burden of demonstrating the accommodation's unreasonableness. At this time, she has not shown why teaching at the virtual school is unreasonable.[4] *See Smith*, 101 Fed. App'x at 25.

To discern what an appropriate reasonable accommodation is, the ADA instructs parties to "engage in an 'interactive process'" that "identif[ies] the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations.'" *See Gearhart v. E. I. du Pont de Nemours and Co.*, 833 Fed. App'x 416, 426 (6th Cir. 2020) (quoting 29 C.F.R. § 1630.2(o)(3)). When the interactive process proves unsuccessful, "courts should attempt to isolate the cause of the breakdown and then assign responsibility." *Kleiber v. Honda of America Mfg., Inc.*, 485 F.3d 862, 871 (6th Cir. 2007).

---

[4] Plaintiff argues that her ADA accommodation of teaching from home full-time is reasonable because Defendant is already offering online learning at some schools due to rising COVID-19 case counts. ECF No. 22, PageID.454. But the reasonableness of Plaintiff's proposed accommodation is not the dispositive issue. Defendant possesses the discretion to choose between different reasonable accommodations. *See Hankins*, 84 F.3d at 800. Teaching in the DVS program currently enables Plaintiff to educate students safely, affording her a reasonable accommodation under the ADA.

The parties here are engaging in an interactive process to accommodate Plaintiff's disabilities. Each side also alleges that the other is not acting in good faith. ECF No. 12, PageID.225; ECF No. 22, PageID.451–452. At oral argument, Defendant claimed it is requesting medical information relating to Plaintiff's asthma and allergies. Plaintiff responded that the medical information Defendant requested was not specific enough. Yet without greater insight into Plaintiff's health related disabilities, Defendant cannot justify offering more targeted alternative accommodations like teaching from home full-time. The Court thus finds Plaintiff's refusal to provide additional information related to her health disabilities as the cause of the interactive process breaking down.

Additionally, Plaintiff's claims that asthma and allegories are "disabilities" under the ADA are reaching at best. Again, numerous courts have said Plaintiff's health conditions are not disabilities. *See, e.g.*, *Lord v. Arizona*, 286 F. App'x 364, 365–66 (9th Cir. 2008); *Land v. Baptist Med. Ctr.*, 164 F.3d 423 (8th Cir. 1999); *White v. Honda of America Mfg., Inc.*, 241 F. Supp. 2d 852, 857 (S.D. Oh. 2003). Plaintiff cites *Peeples v. Clinical Support Options, Inc.*, as authority that asthma is a disability under the ADA. 487 F. Supp. 3d 56, 62 (D. Mass. Sept. 16, 2020). The court in *Peeples* recognized that identifying asthma as a disability was context specific to the COVID-19 pandemic before widespread vaccination. *Id*. at 63. Plaintiff here is fully vaccinated. COVID-19 vaccines are effective at preventing

severe illness or death if an infection occurs. *COVID-19: Key Things to Know*, Centers for Disease Control and Prevention, https://www.cdc.gov/coronavirus/2019-ncov/vaccines/keythingstoknow.html (as of Dec. 16, 2021). The Court does not find on the information provided that Plaintiff is likely to succeed in showing that her asthma rises to the level of a disability under the ADA.

Defendant claims it is engaging with Plaintiff to learn more about her disabilities and accommodate her needs. ECF No. 12, PageID.225. Although Plaintiff contends otherwise, the Court cannot find her likely to succeed on her ADA claim at this point. ECF No. 22, PageID.452.

### B. Irreparable Harm

Next, Plaintiff argues that she faces irreparable harm absent preliminary relief—that harm being loss of employment or contracting COVID-19 and developing health complications. ECF No. 2, PageID.84. Plaintiff is less likely to experience health-related irreparable harm as a vaccinated DVS program teacher. Defendant also maintains that there is no imminent danger of Plaintiff losing her job. ECF No. 12, PageID.226. Additionally, Plaintiff's potential injury from loss of employment has an adequate remedy at law: monetary damages. That injury can be compensated "in the ordinary course of litigation." *Sampson v. Murray*,

415 U.S. 61, 90 (1974). Accordingly, the Court continues to find Plaintiff unlikely to face irreparable harm absent preliminary relief.

### C. Other Preliminary Injunction Factors

The Court finds the balance of equities and public interest weigh against granting Plaintiff's preliminary injunction as well. Defendant argues that an injunction "effectively change[s] District employment policy without District input" and would "result in the payment of public dollars to a public employee to work remotely" 100 percent of the time. ECF No. 12, PageID.227. Plaintiff claims that without an injunction, she must choose between her job and risking her health. ECF No. 2, PageID.86. As Defendant explained, Plaintiff is not at immediate risk of losing her job. It also remains unclear how Defendant's virtual teaching accommodation will risk Plaintiff's health. The Court also denotes the cost of remote learning on students in the Detroit Public Schools, as thousands of students' education was negatively impacted by difficulties inherent with the remote learning paradigm during the previous academic year. *See* Moriah Balingit, *Unprecedented numbers of students have disappeared during the pandemic. Schools are working harder than ever to find them.*, (Feb. 25, 2021, 11:20 PM), https://www.washingtonpost.com/education/pandemic-schools-students-missing/2021/02/25/f0b27262-5ce8-11eb-a976-bad6431e03e2_story.html.

18

Ultimately, the Court finds the balance of equities and public interest to weigh in Defendant's favor.

## V. Conclusion

For the reasons discussed above, the Court DENIES Plaintiff's Motion for a Preliminary Injunction [#2].

The Court also DISMISSES Plaintiff's Motion for Extension of Time as moot [#17].

**IT IS SO ORDERED.**

Dated: December 17, 2021      /s/ Gershwin A. Drain
                              GERSHWIN A. DRAIN
                              UNITED STATES DISTRICT JUDGE

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
December 17, 2021, by electronic and/or ordinary mail.
/s/ Teresa McGovern
Case Manager